JAMES A. MOORE, Appellant, v. THE CAMERON BUILD-
ING & LOAN ASSOCIATION, Respondent.

Kansas City Court of Appeals, April 4, 1898.

Building and Loan Associations: PREMIUM: USURY: ILLEGAL BY-
LAW: STATUTE. To prevent the premium allowed under the statute relating to building and loan associations being usurious, the sales of the loans must be made in a specific manner provided by the statute and must be real competitive sales and not mere colorable forms, and a by-law fixing a minimum premium at which loans will be made is illegal and premiums thereunder are usurious.

*Appeal from the Clinton Circuit Court.*—HON. W. S. HERNDON, Judge.

REVERSED AND REMANDED (*with directions*).

WM. HENRY and CARLTON HENRY for appellant.

(1) The circuit court committed error in refusing to permit plaintiff to prove that defendant association had a fixed minimum premium of forty cents per month on each $100 loaned in letting all of its money; and that its secretary, who usually did the bidding in making loans, uniformly bid only forty cents per month as premium on $100 after the adoption of the

by-laws of July 1, 1893; for this proof would have disclosed the usual course of business of the association, and would have tended to show that the bidding was only colorable, and was a sham and deception, used to cover up the substantial and underlying fact that there was no bidding in, the proper sense of the term, nor competition allowed, but merely an arbitrary letting of all the money at forty cents per month on the $100 as premium, which, with the interest charged at six per cent amounts to usury. 7 Am. and Eng. Ency. of Law, p. 63; State v. Blair, 68 Ill. 541; Smith v. Montgomery, 5 Mon. (Ky.) 502; Bush v. Guion, 9 La. Ann. 798. (2) Statutes exempting building associations from the usury law are to be strictly construed, and the provisions of the statute closely followed. 4 Am. and Eng. Ency. of Law [2 Ed.], p. 1074. (3) Where the statute directs the granting of the loan to the highest bidder, a by-law fixing a minimum premium is illegal. Endlich on Bldg. Ass'ns [2 Ed.], secs. 95, 409, 410, 411; 4 Am. and Eng. Ency. of Law [2 Ed.], p. 1069; Brown v. Archer, 62 Mo. App. 277; Bates v. People's B. & L. Ass'n, 42 Ohio St. 671. (4) The interest and premium charged in this case, amounting to ten and eight tenths per cent per annum being fixed by arbitrary rule of the officers and directors of defendant association, taints the contract with usury. Brown v. Archer, 62 Mo. App. 277; Endlich on Bldg. Ass'ns [2 Ed.], secs. 409–411.

TURNEY & GOODRICH for respondent.

(1) Evidence of the existence of a by-law fixing a minimum premium, and evidence that the loan was awarded to the plaintiff at that premium on a bid put in by him through another at a public auction held at an open meeting of a building and loan association,

does not even *prima facie* establish that the loan was made under the by-law, or that the loan as made was illegal. State v. Gainesville, 29 Ohio St. 92; Stiles' Appeal, 9 W. N. C. (Pa.) 125; 95 Pa. St. 122; Saving Fund and Loan Ass'n v. Young, 9 W. N. (Pa.) 251. (2) Notwithstanding the existence of the by-law, if the evidence shows that the borrower made his application and bid without reference to the by-law or that he was not injured by it, he can not repudiate the loan and sue for an accounting. Endlich on Bldg. Ass'n [2 Ed.], pp. 79, 251, 380, secs. 95, 264, 411, and cases cited; Saving Fund and Loan Ass'n v. Young, *supra*.

GILL, J.—The defendant is, and has been for several years, a building and loan association at Cameron, organized and doing business under article 9, chapter 42, Revised Statutes 1889, and plaintiff is and has been the owner of three shares of its stock. In September, 1895, defendant loaned to plaintiff from its accumulated assets the sum of $600, the latter at the time giving his note therefor by which he obligated himself to pay six per cent interest per annum, payable monthly, $3 monthly dues on his stock and $2.40 monthly premium. To secure this obligation plaintiff made to the defendant a deed of trust covering certain real estate which he owned. The loan and obligations assumed in relation thereto, were made under and subject to the law governing building and loan associations and the by-laws of the defendant.

STATEMENT.

Plaintiff continued to pay the interest, dues on stock and premiums, all monthly as required (except some delays not necessary here to state) until in June, 1897, when he attempted to pay off the loan and redeem his real estate from the incumbrance. But a misunderstanding then arose between the plaintiff and the

Moore v. Building & Loan Ass'n.

association as to the amount required to satisfy the debt and redeem—plaintiff complaining that defendant was exacting illegal charges in the way of fines, interest thereon, and more especially did plaintiff insist that the entire charge of *premiums* which he had paid at the rate of $2.40 per month (or forty cents on the $100 of the amount loaned) was illegal, and credit therefor was demanded. If this disputed monthly premium was to be allowed against the plaintiff, it seems to have been agreed that he then (June 26, 1897) owed defendant the gross sum of $512.91. But, as already stated, plaintiff made, and yet makes, the claim that said monthly premium (which he had paid to the amount of $48) was an illegal charge and usurious, and that in redeeming from the debt and mortgage credit should be given for that amount. And pursuant to this contention plaintiff, at and before the institution of this suit, tendered to defendant $470 which he claimed was sufficient to cover his entire indebtedness but which defendant refused.

The case was heard by the circuit court in September, 1897, the issue above stated was found against the plaintiff, and in order to redeem from the debt and mortgage plaintiff was adjudged to pay the full sum of $512.91 with interest, penalties, etc., to wit, the total sum of $524.01, and from said judgment plaintiff appealed.

From the foregoing it will be seen that plaintiff paid for the use of defendant's money (and paid the same monthly during the loan) not only the six per cent per annum, called "interest," but in addition paid a monthly premium of forty cents on the $100 or $4.80 on the $100 for the year. These two added together would make a rate of $10.80 on the $100 or ten and eight tenths per cent. This of course was beyond the legal rate of interest and was usurious unless protected

BUILDING and loan association: premium: usury: illegal by-laws: statute.

or allowed by the statute governing building and loan associations. Said statute exempts the loans of such building associations from the usury law, provided they are made in a specific manner. By section 2814, Revised Statutes 1889, it is provided that "no premiums, fines or interest on such premiums that may accrue to the said corporation *according to the provisions of this article* shall be deemed usurious," etc. The *provision* of the article which now concerns us is found in section 2812 of the statute relating to building and loan associations, and reads as follows: "The directors of the corporation shall hold stated meetings, at which such sums of money as they may determine shall be offered for loan to all the members in open meeting. The shareholders who shall bid the highest for the preference, or priority of loans, shall be entitled to receive a loan whose amount shall not exceed the number of shares of stock held by such shareholder multiplied by the par value thereof."

It will be noticed that this privilege of borrowing the accumulated funds of the association is confined to the shareholders, and to them in proportion to the par value of stock held by each; also that the stockholder has the right to get the loan for a small or even nominal premium, provided of course that no other member over-bid him at the open meeting held by the directors. This exclusive privilege belongs to the shareholders by virtue of, and in proportion to, their respective stock subscription. If in letting the money out, the officers or directors shall in any way take from the shareholders this privilege of attending the open meetings and securing loans for the least amount of premium they are able to get it in competition only with other members, and shall fix an arbitrary rate or premium below which the borrowing shareholders can not obtain the money, then clearly the statute above quoted is violated

and the premium not fixed "according to the provisions of this article." In order to bring the transaction within the protection of the statute and exempt it from the charge of usury, the premium must be fixed by free and open competition between the borrowing shareholders and not by an arbitrary rule of the officers or directors of the association. Brown v. Archer, 62 Mo. App. loc. cit. 291; Endlich on Building Ass'ns [2 Ed.], sec. 409, and authorities cited in the text.

As tersely expressed by the last named author: "A premium, in order to be lawful, must be one bid for the right of precedence in taking a loan, at a competitive sale of such right; and where there was no such sale and no bid, there can be no lawful premium. In other words, where it was simply agreed between a borrower and the association that he was to have a loan at a certain premium, not the result of any competitive sale, but of mere consent between the parties, the loan was held usurious. The so-called premium was in fact a part of the price named by the lender to be paid by the borrower for the use of the money loaned. The assent of the borrower to pay the price required did not make him a bidder within the meaning of the statute. Calling the excess above the highest legal rate a *premium* did not change the nature of the transaction. It was usurious." * * * "It follows," says the same author, "as a necessary consequence of the illegality of the attempt to establish and enforce any provision as to a fixed minimum premium, that contracts made under the stress of the operation of such a rule, and affected by it to the prejudice of the borrower, are usurious and can not be enforced according to their terms."

When we bring now the facts of the case at bar alongside the principles of law above stated, the illegality of the so-called *premiums* which plaintiff agreed

to, and did in part pay for the loan in question, is made clear. First of all the evidence shows that about two years prior to the loan to plaintiff, defendant adopted a rule or by-law that "no money should be loaned for a less premium than 40 cents per month on each $100." A few days before this loan was effected plaintiff negotiated with defendant's secretary and manager as to the cost thereof; and it was there in effect agreed that in addition to $3 monthly dues on plaintiff's stock the rate of interest proper should be six per cent with the monthly payment of a premium of forty cents on the $100 loaned or $2.40 monthly premium on the $600. The secretary told the plaintiff that he need not attend the directors' meeting and that he (the secretary) would "bid off" the proposed loan for plaintiff at the price agreed and fixed by the by-law. The evidence clearly shows that competitive bidding was not contemplated, and that there was a definite understanding between the borrower and the secretary that the former was to get the loan at the fixed rate of six per cent per annum as interest and $2.40 monthly premium on the said $600. Plaintiff did not appear at the directors' meeting, and the secretary then and there went through the empty form of having the $600 loan auctioned off, and he, pretending to act for the plaintiff, made the only bid for the preference, to wit, forty cents on the $100 which, as already stated, was the minimum premium fixed by defendant's by-law. It is the merest trifling to contend that the plaintiff secured this loan in a competitive bidding. The so-called auction of the loan was a mere pretence; the price therefor was fixed by prior agreement and in accordance with the illegal by-law which unlawfully declared a minimum premium or price of preference. A careful consideration of the testimony adduced at the trial can lead to no other conclusion. Defendant's

counsel concede the invalidity of the by-law attempting to fix a minimum premium to be charged the borrowing stockholder, but adroitly argues that the loan was not made in pursuance thereof. The contention is entirely without merit, and is unsupported by the evidence. The conclusion, too, is irresistible that plaintiff as a borrowing stockholder of the corporation was prejudiced by the existence and enforcement of the illegal rule as to the fixed minimum premium.

In our opinion then the plaintiff was entitled to have the debt and mortgage against him satisfied and canceled on the payment of $512.91 *less* $48 the illegal premiums paid, that is, $464.91. The judgment will therefore be reversed and the cause remanded with directions to the circuit court to enter a decree to that effect. The entire cost in both courts will be adjudged against the defendant. The judges all concur.