## McDONNELL et al., Appellants, v. DE SOTO SAVINGS AND BUILDING ASSOCIATION et al.

### Division Two, June 9, 1903.

1. **Loan Associations:** USURIOUS INTEREST: AUCTION BIDS: STATEMENT OF SECRETARY. Where the borrower from a building and loan association was present and publicly bid for the loan made to him, although he was the only bidder, a previous statement by the secretary that he would have to bid fifteen per cent for the loan in order to get it, in consequence of which the borrower bid the amount suggested by the secretary, can not be construed into an agreement between the association and the borrower to the effect that he was to have the loan at the premium bid by him, but as merely an expression of opinion by the secretary of the amount of premium the borrower would have to pay in order to get the loan.

2. ———: ———: ARBITRARY RATE FIXED BY BY-LAW. A by-law of a building and loan association which fixes a minimum premium of ten per cent makes loans by such association subject to the defense of usury. Such a by-law is inconsistent with the statute which requires free and open competition. Nor does the fact that the association got a larger bid than the usurious rate arbitrarily fixed by the by-law, relieve the association of its illegality.

3. **Interest:** "LEGAL RATE." The usury statute in using the expression "legal rate of interest" means the statutory rate which obtains in the absence of a contract; it does not mean the rate which may be legally contracted for. Likewise the words "legal rate" mean, in this State, the rate which the lender may charge in the absence of a contract, and the words "contract rate" mean any rate above the legal rate which parties are permitted by law to fix upon in their contracts.

4. **Building and Loan Associations:** PREMIUM RATES: CONSTITUTIONALITY OF STATUTE. The Supreme Court will not pass upon the constitutionality of a statute unless to do so is necessary to a proper disposition of the case in hand. Although the appellant may challenge the constitutionality of the building and loan statute as being a special law, in providing that the premiums for a loan bid in accordance with the requirements of the statute shall not be considered interest or render the loan usurious, the court will not pass on that question if it finds that the premiums bid were not made in accordance with the statute and were therefore usurious.

5. ———: DEED OF TRUST: TRUSTEE. An officer of a building and loan association may be the trustee in a deed of trust given to secure a loan made by the association.

6. ———: ———: FORECLOSURE: INADEQUACY OF BID. Mere inadequacy of price, in the absence of other considerations, is no ground for setting aside a foreclosure sale under a deed of trust, unless it be so gross and unconscionable as to shock the moral senses.

7. Deed of Trust: VALIDITY OF SALE: ESTOPPEL: NO PLEADING: WAIVER. It is, as a rule, necessary to plead that the mortgagor is estopped from questioning the validity of the foreclosure sale, by the fact that he was present at the sale, and interposed no objection thereto or the manner in which the property was being sold. But the pleading thereof may be waived by the mortgagor's proceeding with the trial of the case without objection as if the estoppel relied on had been actually pleaded.

8. ———: ———: ———: BUILDING AND LOAN ASSOCIATION: USURIOUS PREMIUM. Although the by-law of a building and loan association which fixes a minimum premium of ten per cent renders loans by such association usurious, yet if according to the terms of the deed of trust there has been a default in the payments of the interest and premium dues and the property covered by such deed of trust is put up and sold, and the mortgagor (or borrower) solicits others to attend the sale and bid on the property, and does himself attend and makes no objection to the validity of the loan or the manner of sale, he will be estopped from asking that the sale be set aside, and the purchaser will take the title.

Appeal from St. Louis City Circuit Court.—*Hon. Jas. E. Withrow,* Judge.

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.

*James J. O'Donohoe* for appellants.

(1) It is well settled in this State: "That the funds of a building and loan association must be offered to the stockholders without restriction as to the premium, affording to each stockholder entitled to borrow the opportunity of borrowing at the lowest rate he can obtain in competition with other stockholders. The board of directors have no right, under the statute, to fix the minimum rate of premium, or to regulate the

premium by private contract with the borrower.''. Rup-
pell v. Mo. Guar. S. & B. Ass'n, 158 Mo. 613; Fry v.
Sav. & Bldg. Ass'n, 88 Mo. App. 289; Fowles v. Loan
Co., 86 Mo. App. 103; Clark v. Mo. Guar. S. & B. Ass'n,
85 Mo. App. 388; Barnes v. Guar. Sav. & B. Ass'n.
83 Mo. App. 466; Edinger v. Mo. Guar. Sav. & B.
Ass'n, 83 Mo. 615; Miller v. Mo. Sav. & B. Ass'n, 83
Mo. 669; Price v. Empire L. Ass'n, 75 Mo. App. 551;
Moore v. Cameron B. L. Ass'n, 74 Mo. App. 468; Brown
v. Arker, 62 Mo. App. 277; Link v. B. L. Ass'n, 89 Pa.
St. 15; B. L. Ass'n v. McKnight, 35 Pa. St. 470; Ma-
roney v. B. L. Ass'n, 57 Mo. App. 384.    (2)    Section
1364, Revised Statutes 1899, and all corresponding sec-
tions, as well as all by-laws based thereon, do not pro-
tect the present case from the charge of usury, for the
Legislature has no power by a special law to authorize a
certain class of corporations to loan money at a higher
rate of interest than is allowed by the Constitution and
general laws of the State; such sections and by-laws are
in conflict with article 4, section 53, Constitution of Mis-
souri and section 3709, Revised Statutes 1899.    Reiser
v. Savings F. Ass'n, 39 Pa. St. 137; Premium F. Asso-
ciation's Appeal, 39 Pa. St. 156; Simpson v. Kentucky
Citizens B. L. Ass'n, 101 Ky. 496; Monticello B. L.
Ass'n v. Smyth, 10 Cent. L. J. 434; Citizens Security
Co. v. Uhler, 48 Md. 455; Association v. Bollinger, 12
Rich Eq. (S. C.) 124; Cooley on Constitutional Limi-
tations, p. 485; Endlich on Building Associations, sec.
363.    (3)    Part of the act concerning building and loan
associations has been passed on by this court and held
to be unconstitutional.    State ex rel. v. McGrath, 95
Mo. 193.    (4)    The *cestui que trust* can not serve as
trustee, and while bearing that relation his acts as
trustee are void.    Craig v. Hone, 2 Edw. Ch. 554;
Coster v. Lorillard, 14 Wend. 354; Farmers' Loan &
Trust Co. v. Carroll, 5 Barb. 643; Bundy v. Bundy, 38
N. Y. 417.    (5)    A sale under a deed of trust is not
valid if the trustee be not present and conduct the sale

himself. He can not delegate his powers as trustee to another. St. Louis v. Priest, 88 Mo. 612; Sparlook v. Sproul, 72 Mo. 503; Brickinkamp v. Rees, 69 Mo. 426 Landrum v. Bank, 63 Mo. 48; Harper v. Mansfield, 58 Mo. 17. (6) The grossly inadequate sum for which the property was sold is sufficient to indicate fraud and imposition and to set aside the sale. But if not, of itself, when coupled with the other unfavorable circumstances attending the transaction and surrounding the sale, demands that the sale should be set aside. Montgomery v. Miller, 131 Mo. 595; Holdsworth v. Shannon, 113 Mo. 508; Cole Co. v. Madden, 91 Mo. 614; Vail v. Jacobs, 62 Mo. 130; Stoffle v. Schroeder, 62 Mo. 147; Durfree v. Moran, 57 Mo. 374; Thornton v. Irwin, 43 Mo. 153; Railroad v. Brown, 43 Mo. 294; Holmes v. Fresh, 9 Mo. 201. (7) It is held in the cases: Arbuthnot v. Association, 72 S. W. 132; Thudium v. Brookfield L. & B. Co., 72 S. W. 134; Callison v. Association, 72 S. W. 477, that a by-law fixing a minimum premium makes a loan usurious, and that, too, even though the premium, as in this case, is in excess of that fixed by the by-law, that in such a case the creditor is entitled to only six per cent interest on the loan, and that the borrower is entitled to credit on the principal for all payments made in excess of such rate. (8) The respondents in this case did not plead estoppel, and, to be available as a defense, it must be pleaded. Cockrill v. Hutchinson, 135 Mo. 75; Throckmorton v. Pence, 121 Mo. 60; Avery v. Railway, 113 Mo. 568; Hammerslough v. Cheatham, 84 Mo. 21; Bray v. Marshall, 75 Mo. 330; Ferneau v. Whitford, 39 Mo. App. 317; Rock Island Plow Co. v. Lang, 55 Mo. App. 356.

*Campbell & Thompson* for respondents De Soto Savings and Building Ass'n and Joseph P. Harnett.

(1) The mere fact that the defendant association had a by-law fixing a minimum premium of ten per

cent., does not render the premiums invalid, because the by-law was utterly disregarded in these transactions; the loans were made by bidding as the statute requires, and without reference to the by-law. Again, the by-law was void and was never re-enacted after the Act of 1895. Bertsch v. Ass'n, 147 Mo. 365; Endlich on B. & L. Ass'ns, secs. 411, and 95; Thornton & Blackledge on B. & L. Ass'ns, sec. 229; Fund & Loan Co. v. Young (N. D.), 9 W. N. C. (Pa.) 251; Albright v. Bldg. Ass'n, 102 Pa. St. 411; Savings & Loan Co. v. Shain, 77 N. W. 1006. (2) When, as in these loans, the premium is deducted in advance, it is proper to charge interest on it. R. S. 1899, secs. 1364, 2814; Thornton & Blackledge on B. & L. Ass'ns, secs. 226, 281; Ass'n v. Neurath, 2 W. N. C. 95; Selden v. Ass'n, 81 1-2 Pa. St. 336; Ass'n v. Webster, 25 Barb. 263; Ass'n v. Robinson, 69 Ala. 413; Loan & Trust Co. v. Whithed, 49 N. W. 318; Bowen v. Bld. Ass'n (N. J.), 28 Atl. Rep. 67, 51 N. J. Eq. 272; In re Martin's Estate, 56 Minn. 420. (3) Even though the premiums should be treated as interest, yet on the evidence before the court the total amount of interest charged per year can not be calculated, because plaintiff neglected to offer evidence to show when the stock would probably mature. Laidley v. Cram, 70 S. W. 913; 4 Am. and Eng. Ency. of Law (2 Ed.), 1077. There is no presumption that the loan was usurious. Thornton & Blackledge on B. & L. Ass'n, sec. 256. If the premium has not been properly charged, yet the loan is not usurious if the premium, together with the interest, does not exceed the lawful rate of interest. Brown v. Archer, 62 Mo. App. 277; More v. Ass'n, 74 Mo. App. 468; Price v. Ass'n, 75 Mo. App. 551; Sappington v. Ass'n, 76 Mo. App. 242; Barnes v. Ass'n, 83 Mo. App. 466; Edinger v. Ass'n, 83 Mo. App. 615; Miller v. Ass'n, 83 Mo. App. 669; Clark v. Ass'n, 85 Mo. App. 388; Fowler v. Ass'n, 86 Mo. App. 103; Fry v. Ass'n, 88 Mo. App. 289; Ruppell v. Ass'n, 158 Mo. 618. (4) Neither section 1364, Revised Statutes 1899,

nor any of the other sections of the act relating to building and loan associations, violates article 4, section 53 of the Constitution. Said act is constitutional. It is not a local or special law fixing the rate of interest. State ex rel. v. Herrmann, 75 Mo. 340; Masonic Aid Ass'n v. Waddill, 138 Mo. 628; Haynie v. Indem. Co., 139 Mo. 416; State ex inf., v. Aetna Ins. Co., 150 Mo. 113; Hammann v. Central Coal & Coke Co., 156 Mo. 232; Holmes v. Smythe, 100 Ill. 413; Wright v. Ass'n, 128 Ill. 84; McLaughlin v. Bldg. Ass'n, 62 Ind. 264; Loan & Trust Co. v. Whithed, supra; Savings Bank v. Allen, 28 Conn. 97; Welch v. Wadsworth, 30 Com. 149; Archer v. Ass'n (W. Va.), 30 S. E. 241; Smoot v. Ass'n (Va.), 29 S. E. 746; Loan Ass'n v. Richards, 21 Ga. 592; Ass'n v. Robinson, 69 Ala. 413; Brandon v. Miller, 118 Fed. 361; 4 Am. and Eng. Ency. Law (2 Ed.), p. 1073. This question can be raised only by the State. Wright v. Bldg. Ass'n, 128 Ill. 67; Frieland v. Ins. Co., 94 Pa. St. 504; Morawetz on Corp., secs. 759, 760. (5) The trustee was the selection of both plaintiff and defendant associations; he was present at the sale and the sale was cried by an auctioneer at his request in his presence. After having agreed to him as trustee, plaintiff will not be heard to say that he was incapable of acting as trustee. Lipscomb v. Ins. Co., 138 Mo. 23; Million v. McRee, 9 Mo. App. 344; Brickenkamp v. Rees, 69 Mo. 426; Lewin, Trusts and Trustees, sec. 448; Lewin, Law of Trusts, p. 498. (6) Mere inadequacy of price, abstracted from all other considerations, is not sufficient to induce a court to set a sale aside, unless the inadequacy is so great and unconscionable that of itself, *ex evidentia rerum,* it proves fraud, and the evidence does not bring this sale within the rule. Holmes v. Fresh, 9 Mo. 213; Bispham on Equity, sec. 219; Keith v. Browning, 138 Mo. 23; Hardwicke v. Hamilton, 121 Mo. 465; Million v. McRee, 9 Mo. App. 344; Kline v. Vogel, 11 Mo. App. 211; Harlan v. Nation, 126 Mo. 97; Morris v. Philliber, 30 Mo. 145; Routt v. Milner, 57

Mo. App. 50; Phillips v. Stewart, 59 Mo. 491; Landrum v. Union Bank, 63 Mo. 48; Judge v. Booge, 47 Mo. 544; Maloney v. Webb, 112 Mo. 575; Kingman & Co. v. Hill, 71 Mo. App. 666. (7) Plaintiff being a director of the association at the time the bonds and deeds of trust were executed, permitted sale to be made without objection, and is estopped from asking that the sale be set aside or that the loan be declared usurious. Reynolds v. Kroff, 144 Mo. 433; Taylor v. Zepp, 14 Mo. 482; Peckington v. Nat'l Ins. Co., 55 Mo. 172; Slagee v. Murdock, 65 Mo. 522; Skinner v. Stowe, 4 Mo. 93; Imbodem v. Ins. Co., 31 Mo. App. 321; Endlich B. & L. Ass'n, sec. 377; Spurlock v. Sproule, 72 Mo. 503.

*Thomas E. Ralston* for respondent Anderson.

(1) John McDonnell, as well as Lorenzo E. Anderson, agent of the Wiggins Ferry Company, and Alonzo C. Church (vice-president), of said company, were all present at the sale made by the trustee, Hartnett, under deed of trust on July 18, 1899. McDonnell solicited Zelle Brothers, holding a third deed of trust on the property for $3,000, to be present and bid, and he, with full knowledge of all the facts in the case, remained totally silent, made no protest against the legality of the sale, and voluntarily, without warning, stood by and saw the property sold to Alonzo E. Anderson for $13,-100. Under these circumstances, he, his heirs and personal representatives are forever estopped, in equity, morals and good conscience, from questioning the validity of such sale, as against defendant, Lorenzo E. Anderson. Bigelow on Estoppel (5 Ed.), pp. 559 to 561, 584, 585, 586, 596; Gregg v. Wells, 10 Ad. & E. 90; Tyler v. Ins. Co., 108 Ill. 58; Lake v. Brown, 116 Ill. 83; Perkins v. Conant, 29 Ill. 184; Niven v. Belknap, 2 Johns. 513; Studdard v. Lemond, 48 Ga. 100; Wendell v. Van Rensselaer, 1 Johns. Ch. 344; Storrs v. Barker, 6 Johns. Ch. 166; 1 Story Eq. Jur. (13 Ed.),

secs. 385-387; Guffey v. O'Reiley, 88 Mo. 418; Skinner v. Stouse, 4 Mo. 96; Masterson v. Railroad, 72 Mo. 348; The Planet, etc., Co. v. Railroad, 115 Mo. 613; Kirk v. Hamilton, 102 U. S. 76; Cady v. Owen, 34 Vt. 603; Anderson v. Amstead, 69 Ill. 452; Morgan v. Railroad, 96 U. S. 720; Lucas v. Hart, 5 Iowa 415; Chapman v. Pingree, 67 Me. 202; Stone v. Tyree, 30 W. Va. 701; Jones v. Phelps, 33 Ark. 468; Oliver v. Beard, 72 Mo. App. 181. Where a man is estopped, the estoppel bars his personal representatives and heirs. Lawson's Admr. v. Chapman, 79 Mo. App. 620; Wendell v. Van Rensselaer, 1 Johns. Ch. 344. (2) The evidence raising the equitable estoppel against John McDonnell by reason of his acts, conduct, knowledge, negligence, and silence was elicited from him, and from his witness, Mr. Brady, without objection, and it is now too late to raise the question that the facts constituting the estoppel were not pleaded. Price v. Hallett, 138 Mo. 573. Equitable "estoppels may be given in evidence and operate as effectually as technical estoppels." Guffey v. O'Reiley, 88 Mo. 429. And equity will never relieve a plaintiff, except upon "terms that are just and equitable." Ruffel v. Ass'n, 158 Mo. 622. (3) There was a default on June 4, 1899, not only as to six months' interest and dues, but also as to unpaid taxes, and these defaults continued until the sale under the deed of trust. This default as to non-payment of taxes justified the sale, independent of every other question in the case.

BURGESS, J.—This suit was instituted by John McDonnell and Catherine McDonnell, his wife. Since the suit has been pending in this court John McDonnell died, and the suit was duly revived in the name of his heirs and the administrator of his estate. The purpose of the suit is to have cancelled and set aside two certain bonds and two deeds of trust securing the same, executed by McDonnell and wife, to defendant Hartnett,

as trustee of the De Soto Savings and Building Association, as well as the sale of the property described in the deeds of trust by said trustee, and the deed by him to the defendant Anderson.

The petition is in two counts. In the first count it is alleged in effect that on the 10th day of April, 1895, plaintiffs, McDonnell and his wife, borrowed of defendant De Soto Savings & Building Association the sum of $3,000, at the stipulated rate of fifteen per cent; that the premium for said sum was deducted and the balance of $2,550 was paid to plaintiffs; that this loan of $3,000 was on the 27th of August, 1897, secured by a bond and deed of trust on certain property on Bremen avenue, in the city of St. Louis, Missouri; that on the 14th day of May, 1896, McDonnell and wife borrowed of the defendant association, the sum of $13,000, at the stipulated rate of interest of six per cent per annum; that from this sum, fifteen and one-half per cent premium was deducted, and a balance of $10,985 was paid to McDonnell; that to secure the payment of said $13,000 loan, McDonnell executed his bond and deed of trust on the same property on Bremen avenue. The petition then recites that from the 10th day of April, 1895, when the first payment on stock and interest was made, until the 19th of May, 1899, when the last payment on stock and interest was made, McDonnell paid to the association the sum of $5,795. That since the 10th of April, 1895, McDonnell has been the owner of eighty shares of the stock of said defendant association, which stock, together with the earnings, profits, and dividends "aggregate a sum the exact amount of which is unknown to plaintiff, but which should have been applied by said association to the payment of the loans aforesaid." That in said deed of trust Joseph P. Hartnett was made trustee, and that in said capacity he offered the property described in said deeds of trust for sale on the 18th day of July, 1899, and sold it to Lorenzo E. Anderson for the sum of

$13,100, and executed to him his deed as trustee therefor; that said property was of the value of $55,000 on the day of sale, and that plaintiffs had made all legal payments to the association that could be demanded, and were not delinquent at the time of the foreclosure under said deeds of trust.

The petition then closes with a prayer for relief, which is as follows:

"Wherefore plaintiffs pray that the bonds aforesaid be delivered up to plaintiffs to be cancelled; that said deeds of trust be ordered cancelled on the records; that a general accounting be taken between plaintiffs and defendants, and the amount due defendants, if any, be judicially ascertained and determined; that defendants be ordered to pay to plaintiffs the difference between the actual value of said property and the amount that plaintiffs owe defendants, if any be so found to be due them, and for their costs in this behalf expended; and for such other orders, decrees, and judgments as may be proper in view of the premises."

The second count alleges that plaintiff borrowed from the association the amount stated in the first count, executed the bonds and deeds of trust mentioned in the first count; that the payments were deducted as alleged in the first count, and that plaintiffs had paid to the association the amounts stated in the first count. This count alleges that Joseph P. Hartnett, trustee in said deeds of trust "confederating with his co-defendants, De Soto Savings & Building Association, and Lorenzo E. Anderson, to obtain said property for their own use, and to defraud plaintiffs of said property and in pursuance of this fraudulent design, claimed that plaintiffs were delinquent in payments under said deeds of trust, and caused the real estate described in said deeds of trust to be advertised and sold under both deeds of trust, the same being purchased by defendant, Lorenzo E. Anderson, colorably, and not for value, but for a pretended consideration of $13,100, in order that he might

make such purchase, not for himself, but in reality for all of said defendants.'' The petition then alleges that the property was sold for a pretended consideration of $13,100, while the property was, at the time of the sale, and is now worth $55,000; that said sale was made on the 18th day of July, 1899, and the trustee's deed made, executed and delivered by the trustee to said Anderson; that at the time of the foreclosure sale plaintiff had made all payments that could be lawfully demanded, and that they were not delinquent. Then follows the prayer for relief:

"Wherefore, plaintiffs pray that the bonds aforesaid be delivered up to plaintiffs for cancellation; that said deeds of trust be cancelled; that said sale be set aside and for naught held; and that the trustee's deed be cancelled, and the title to said property be divested out of said defendants and vested in plaintiffs; that an accounting be had between the plaintiffs and defendants, and the amount found to be due, if any, by plaintiffs to defendants, be ordered to be paid, which plaintiffs are ready, willing and able, and hereby offer and agree to do, and for such further orders, decrees and judgments as may seem proper in view of the premises.''

The De Soto Building & Loan Association and Lorenzo E. Anderson filed separate answers, but they are in all respects the same, except that the answer of Lorenzo E. Anderson differs from that of the association in this: he alleges that he bought said property not for himself or defendant association, but for the Wiggins Ferry Company.

Their answers allege that in April, 1895, plaintiff, John McDonnell was and for a long time prior thereto had been and that he continued to be until about July, 1898, a stockholder in the defendant association, and that until March, 1896, he was a director of said association. They then set out a number of the by-laws of the association, the section quoted having particular reference to the making of loans, and the foreclosure of

securities. They then recite that in April, 1895, John McDonnell was the owner of eighty shares of stock of the association; that he made application for a loan of $3,000, and having bid fifteen per cent therefor at auction, and being the highest bidder, said sum was knocked down to him by the defendant association, and was, less the premium, paid to said McDonnell; that to secure the payment of said sum, McDonnell gave a deed of trust on property on Prairie avenue, in the city of St. Louis; that in September, 1897, upon McDonnell's application said loan of $3,000 was transferred from the property on Prairie avenue to the property described in the petition, on Bremen avenue, and that said bond and deed of trust on the Prairie avenue property were cancelled and released, and the association took from McDonnell a bond and deed of trust to secure said loan of $3,000 on the said Bremen avenue property; that said $3,000 deed of trust has not been paid, and that there still remained due to the association on said loan, the sum of $2,415.56, which was paid out of the proceeds of the foreclosure sale hereafter mentioned; that on May 13, 1896, McDonnell applied for a loan of $13,000 on his remaining sixty-five shares of stock, and at a meeting of the association held on that date, bid fifteen and one-half per cent therefor as premium at auction, and said sum was knocked down to him as the highest bidder; that the premium of fifteen and one-half per cent was deducted, and the remainder paid to plaintiffs; and to secure the payment of said loan of $13,000, plaintiffs executed a bond and deed of trust upon the Bremen avenue property; that thereafter plaintiff McDonnell continued to pay monthly dues and interest upon the two loans of $3000 and $13,000 until he became delinquent; that commencing with August 11, 1896, McDonnell began to be delinquent in his payments upon account of his eighty shares of stock pledged as aforesaid, said payment being $80 per month dues and $80 per month interest; that the association was lenient with

him with respect to its right to foreclose, and allowed him a reasonable chance to pay up before finally proceeding to sell his property; that under the terms of section 9 of its by-laws, if the borrower "failed totally in his payments during the space of six months, or if the balance due by the borrower has been allowed to accumulate until it equals the sum of six months' dues and interest, then the board may, in its discretion, proceed at any time to advertise for sale, under said deed of trust, the property pledged to the association by such borrower." That McDonnell had for the period of six consecutive months prior to the date of the sale thereafter mentioned, failed to pay the dues, interest, fines and other charges required of him by the by-laws, and had become indebted to the association in a sum equal to the gross amount of the dues, interest, fines and other charges for the period of six months upon both said deeds of trust; that thereupon in pursuance of law, and the by-laws of said association, the board of directors of the said association requested the trustee named in said deeds of trust to proceed to advertise and sell said property described in said deeds of trust; that the sale was duly and legally advertised in accordance with the terms of said deeds of trust, for a period of twenty days in the St. Louis Star, and on the 18th of July, 1899, the property was by said trustee sold pursuant to the terms of said deeds of trust, to Lorenzo E. Anderson, the highest and best bidder, for $13,100, which sum was thereafter received by the trustee from Anderson, and the trustee executed and delivered to him his deed to the said Bremen avenue property; that the trustee paid out of the proceeds of said sale the charges costs and expenses connected with the execution of his trust, the amount due the association under the said $13,000 deed of trust, and under the said $3,000 deed of trust, leaving a balance in his hands of $15.57.

The second count, after generally denying the allegations of the petition, sets up the same state of facts

as alleged in the first count heretofore recited, and concludes as follows:

"Defendant says that said Anderson bought in good faith, and for the actual consideration named, to-wit, $13,100, and neither this defendant nor the said trustee had any interest directly or indirectly in said purchase. This defendant says that the said trustee paid out of the proceeds of the sale the charges, costs and expenses connected with the execution of his trust, and the amount due this defendant under said $13,000 deed of trust, and the amount due to it under said $3,000 deed of trust, leaving a balance in his hands of $15.57."

Joseph P. Hartnett filed a separate answer, and after a general denial pleaded as new matter that he was named as trustee in the deeds of trust mentioned in plaintiff's petition, and that there having been default made by McDonnell under the $13,000 deed of trust, he was requested by the association, the holder of the bond secured by said deed of trust, to advertise and sell the property described therein; that on the 23d day of June, 1899, he proceeded to advertise said property for sale in the St. Louis Star; that said advertisement was continued in said paper for twenty days, and upon the day advertised to be the day of sale, which was July 18, 1899, he sold in accordance with the requirements of said deed of trust and said advertisement, the property therein described, at public venue, to the highest bidder, at the east front door of the courthouse in the city of St. Louis, and Lorenzo E. Anderson, being the highest bidder, the property was knocked down to him at the sum of $13,100 cash, which price Anderson paid to Hartnett on the same day, and Hartnett as trustee applied the same to the payment of the costs and expenses of the sale, to the amount due as he was informed, to the defendant association under the $13,000 and $3,000 deeds of trust, leaving a balance in his hands of $15.57, which he was, and has always been ready and willing to pay plaintiffs; that the sale was made by him in good faith,

and in strict accordance with his powers and duties as trustee; that he paid out the proceeds of said sale as he was required legally and equitably to do; that said Anderson was a bona fide purchaser, and that defendants were not interested directly or indirectly in said purchase, "nor in anywise in said sale except as trustee as aforesaid." His answer to the second count is the same as his answer to the first count.

The replication to the answer of the association pleads that the amounts charged plaintiff by the defendant association as dues, interest, fines, premiums, and other charges, were illegal and usurious; that the sections of the by-laws set up in the association's answer, as well as section 2814, Revised Statutes 1889, concerning premiums, on which said by-laws are alleged to be based, are in conflict with and contravene section 53, article 4, of the Constitution of the State of Missouri, and also that they violate sections 5973, 5975, Revised Statutes 1889, and are also in violation of the Laws of 1891, pages 169 and 170.

The replication to the answer of Lorenzo E. Anderson states that the by-laws concerning interest, dues, and other charges, were illegal because of the facts stated in the replication to the answer of the De Soto Savings & Building Association, and that said Anderson and the Wiggins Ferry Company knew this fact; that Anderson did not purchase said realty in good faith, and that he and the Wiggins Ferry Company "had full knowledge and notice of the wrongful and unlawful acts of said Anderson's co-defendants." The remainder of this replication sets up the illegality and unconstitutionality of the by-laws and statutes in the same manner in which they are pleaded in the replication to the answer of the association.

The replication to the answer of Jos. P. Hartnett sets up the illegality of the by-laws and the unconstitutionality of the by-laws, alleging that they contravene section 54 of article 4 of the Constitution of the State

of Missouri, and states that Hartnett has been since April, 1895, a shareholder in the defendant association, a member of its directory, president thereof, and knew that the by-laws were illegal, and that he also knew that plaintiffs were not in default at the time he advertised said property for sale.

The trial resulted in favor of defendants, dismissing plaintiff's bill, and judgment against them for costs.

They appeal.

The facts are briefly stated by counsel for the defendant association and Hartnett, as follows:

On the 10th day of April, 1895, John McDonnell, since deceased, was the owner of eighty shares of stock in the defendant association. He was also at that time a director in the association, and continued to be such until the year 1898. On that day he borrowed from the association, on fifteen shares of his stock, the sum of $3,000 from which was deducted $450, the premium bid at auction by McDonnell for the preference, and the balance of $2,550 was paid by the association to him. To secure the payment of said $3,000 McDonnell executed his bond in favor of the association in that amount, bearing six per cent interest, and a deed of trust on property on Prairie avenue, in the city of St. Louis, Missouri.

On the 14th day of March, 1896, he again made application for a loan of $13,000, on his remaining sixty-five shares of stock, and said sum being put up at auction, at which he was the highest bidder, was awarded him on his bid of fifteen and one-half per cent. The premium of $2,015 was deducted, and the balance of $10,985, was either given to him or paid out at his direction. To secure the payment of this sum McDonnell executed in favor of the association his bond for $13,000, bearing interest at six per cent per annum, and deed of trust on property of McDonnell situated on Bremen avenue, in the city of St. Louis, Missouri.

About August 24, 1897, at the request of McDonnell, the association cancelled the first bond and deed of trust, and accepted in lieu thereof a new bond for the same amount and a second deed of trust to secure the payment of the same upon the Bremen avenue property also. The first bond and deed of trust were cancelled, and McDonnell executed a new bond for $3,000, bearing six per cent interest, and a deed of trust on the Bremen avenue property.

Said bonds were alike in form, and each provided as follows:

"And that they will faithfully pay all dues and fines on said stock, and also the interest aforesaid, and perform any other obligation required of them by the by-laws, rules and regulations required, or may be by said association or the board of directors, and keep the association free from all losses and damages by reason of said loans.

"Now, therefore, the condition of this obligation is such that if the above bound obligors, their heirs, etc., shall and do well and truly pay or cause to be paid, unto the above-named association, its attorney, successors or assigns, the sum of $13,000 in one case and $3,000 in the other, on account of the stock in said association, and the interest on said loan when due (monthly dues and interest being payable on the second Wednesday of each and every month from the date of these presents until the dissolution of the association), etc., then the above obligation to be void, provided, however, that it is expressly agreed that if at any time default shall be made in the payment of said monthly dues, interest or fines, and the same shall remain unpaid for the space of six months after any payment thereof shall fall due, then the whole principal debt, with interest thereon, from the date of these presents to the date of sale, at the rate of six per cent per annum, shall at the option of the association, its successors and assigns, immediately become due and recoverable, and the payment of said

principal sum and all interest thereon, as well as dues, and fines then due and payable, may be enforced and recovered at once by sale under said deed of trust of the property described therein, according to the terms and provisions of said deed of trust."

In each deed of trust it was provided as follows:

"That if at any time default should be made in the payment of monthly dues, interest or fines, and the same shall remain unpaid for the space of six months after any payment thereof shall fall due, then the whole principal debt shall, at the option of said association, its successors and assigns, immediately thereupon become due and recoverable, and payment of said principal sum, and all interest thereon, as well as monthly dues and fines then due, may be enforced and recovered at once by sale, under the deed of trust, of the property herein described, according to the terms and provisions of this deed of trust. . . . But if the said parties of the first part, or their legal representatives, shall fail to pay or cause to be paid unto the said association, its attorneys, successors or assigns, the monthly installments of dues, interest and fines . . . as above provided and according to terms, tenor and effect of the said bond, then this deed shall remain in force, and the said party of the second part may proceed to sell," etc.

The only difference in the bonds is the amount agreed to be paid, viz., in the one case McDonnell agreed to pay on the sixty-five shares of stock the sum of $130 a month, $65 being payment of $1 a month on each share of stock, and $65 being interest at six per cent on $13,-000; and in the other case, viz., the $3,000 loan, McDonnell promised in the bond to pay $15 a month on his fifteen shares, and $15 a month interest, being six per cent of $3,000. Accordingly McDonnell was under obligation to pay to the association monthly, the sum of $80 on dues, and $80 interest, or the aggregate of $160 per month.

From the month of April, 1897, to the month of December, 1897, a period of eight months, McDonnell paid no dues, interest or fines. He then began his payments of $160 a month, and continued to make them monthly until May, 1898, but failed to pay his dues, interest and fines for the eight months from April to December, 1897, though often requested by the association to do so.

The association decided in June, 1898, to sell the security, viz., the Bremen avenue property, and requested Hartnett, the trustee, to do so. He gave the required twenty days' public advertisement through the St. Louis Star, and on July 18, 1898, sold the property at the east front door of the courthouse in the city of St. Louis, to Lorenzo E. Anderson, the highest bidder, for $13,100. At this time McDonnell owed to the association, after allowing him all just credits, the sum of twelve thousand nine hundred and some odd dollars. He was present at the sale and offered no objection to the sale of the property or the manner in which it was being sold. He was a director of the association when both advancements were made.

Section 1 of the by-laws of the association provides that no loan shall be made at a less premium than ten per cent.

It is argued by plaintiffs that because the by-laws of the association provide that ''no loan shall be made at a less premium than ten per cent,'' there is thereby fixed an arbitrary rule, which in effect told McDonnell that he could not procure a loan from the association at less than ten per cent premium, and that although McDonnell bid fifteen per cent premium on the $3,000 borrowed, and fifteen and one-half per cent upon the $13,000, the premiums paid by him were usurious. In support of this contention plaintiff relies upon the case of Price v. Empire L. Association, 75 Mo. App. 551, in which it is held that as the loan was not sold at an open meeting of the directors, but the premium or costs of

preference was fixed by the arbitrary demand of the corporation, the premium paid was usurious.

But in the case at bar the evidence clearly shows that the loans to McDonnell were made at public meetings of the board held for that purpose and that he was present in person upon each occasion, and was the highest and only bidder for the $3,000 loan upon which he bid a premium of fifteen per cent, and for the $13,000 loan a premium of fifteen and one-half per cent. While McDonnell testified with respect to the first named loan, that Brady, the secretary of the association, told him that he could get it, but that he would have to pay pretty high for it, about fifteen per cent, and with respect to the $13,000 that Brady told him he would have to pay fifteen and one-half per cent premium upon it, and in consequence of these statements he bid the amount suggested by Brady, this can not be construed into an agreement between the association and McDonnell by which he was to have the loans at the premiums bid by him, but was merely the expression of opinion by Brady as to the amount of premium he, McDonnell, would have to pay if he secured the loans. There is nothing disclosed by the record to justify the conclusion or inference that McDonnell was constrained by any arbitrary action of the defendant association or its officers in bidding for the loans or either of them, unless it was by the ordinance fixing the minimum rate of premium at ten per cent. It has been held by the Courts of Appeals in numerous cases arising under the Act of 1889, that if the loan was made in the manner provided by that statute, it was a valid loan, though the premium, interest, etc., aggregated more than a lawful rate of interest. But if the statute was disregarded it would not protect the loan from the charge of usury, and that where the association had a fixed minimum premium at which they made loans, that was an act in disregard of the statute and the loan usurious. [Brown v. Archer,

62 Mo. App. 277; Moore v. Building & Loan Ass'n, 74 Mo. App. 468; Barnes v. Sav. & Bldg. Ass'n, 83 Mo. App. 466; Clark v. Mo. Guar. Ass'n, 85 Mo. App. 388; Fry v. Savings & Bldg. Ass'n, 88 Mo. App. 289; Cover v. Building & L. Ass'n, 93 Mo. App. 302; Arbuthnot v. Brookfield Loan & Building Ass'n, 72 S. W. 132.]

But the loans in the case at bar were made under the present statute and are governed by section 1362, Revised Statutes 1899, which does not require bids for money offered to be loaned to be made at competitive bidding in open meeting called by the directors, but provides that loans shall be let to "shareholders who shall bid the highest premium." That McDonnell as a stockholder was entitled to bid for the loans, and if the highest, or the only bidder, entitled to the loans, we think clear. [Ruppel v. Mo. Guar. S. & B. Ass'n, 158 Mo. 613.] But the question is whether the by-law fixing a minimum premium at ten per cent, which defendant association admits in its answer was in force at the time the loans were voted, made them subject to the defense of usury, though the premiums actually received were in one instance only five, and in the other only five and one-half per cent in excess of the minimum rate prescribed by the by-law? The authorities upon this feature of the case are not in harmony, but in this State, the rule seems to be that such a by-law is inconsistent with the statute which requires free and open competition. Under this by-law the bidder was compelled to pay more than ten per cent, while there could have been none under that rate because of the arbitrary minimum rate fixed by by-law. While the case of Arbuthnot v. Brookfield Loan & Building Ass'n, supra, was under the law of 1889, what was said with respect to a by-law of the association fixing the minimum rate of premium at sixteen per cent is directly in point in this case. It is as follows:

"Defendant had a by-law declaring that the premium to be received for preference of loans should not

be less than sixteen per cent; that when this loan was let to plaintiff the secretary of the association who cried the bids, opened the auction by announcing that no bid would be received under sixteen per cent; that thereupon bids were made over that rate until the loan was sold to plaintiff at twenty-five and one-half per cent. In our view, that manner of letting the loan gave effect to the objectionable by-law, and was in the face of the statute directing free and open competition. The by-law was enforced by the opening declaration of the secretary. The bidders were compelled to bid more than sixteen per cent, and, while there was competition above that rate, there could be none under that rate. It is manifest that there can be no fair and free letting of a loan, when a certain rate is determined upon beforehand, under which no loan would be made. The by-law arbitrarily fixed upon sixteen per cent as the rate, unless the association could get more. The by-law itself fixed a usurious rate, and, being fixed, it was not protected by the statute. When the association adopted the by-law, and enforced it through the act of its secretary, it was demanding usury in a manner unauthorized, and therefore it placed itself outside the protection of the statute; and the fact that it got more usury than it demanded in the by-law does not relieve the transaction of its illegality. We are cited to Endlich on Building & Loan Associations, section 411, but the citation does not support defendant. That author says that if the premium exacted was the result of fair competition, without reference to the illegal by-law, 'no bid being refused because below the established minimum, nor raised for the sole purpose of covering it,' the borrower has no cause of complaint. But in this case, while no bid was refused for the reason that it was below the rate named in the by-law, yet the bidders were advised at the outset that they would not be permitted to bid below that rate.''

Defendants contend that even if the premiums

were arbitrarily fixed, and charged arbitrarily with reference to the minimum premium by-law, yet the record does not disclose that the premium, together with the interest, could exceed the rate which McDonnell and defendant association could agree upon. But we are unable to concur in this view. The bonds in the case in hand drew, according to their provisions, six per per cent interest per annum, which in this State is the legal rate, but which may be made eight per cent by contract. And so the former is generally termed the "legal rate," and the latter, the "contract rate." The statute (sec. 3709, R. S. 1899), provides that "usury may be pleaded as a defense in civil actions in the courts of this State, and upon proof that usurious interest has been paid, the same, in excess of the legal rate of interest, shall be deemed payment, shall be credited upon the principal debt, and all costs of the action shall be taxed against the party guilty of exacting usurious interest, who shall in no case recover judgment for more than the amount found due upon the principal debt, with legal interest, after deducting therefrom all payments of usurious interest made by the debtor, whether paid as commissions or brokerage, or as payment upon the principal, or as interest on said indebtedness." Defendant claimed, at the argument, that, as eight per cent may be legally contracted for, the statute when using the expression "with legal interest," meant the interest stipulated in the contract, provided it was within the rate which could be legally contracted for. We think not. The statute, in using the expression "legal rate of interest," meant the statutory rate which obtains in the absence of a contract. Usury avoids the contract as to interest, and the statute disposes of it by giving the creditor the statutory rate, and applying the overplus towards the payment of the principal debt. [Arbuthnot v. Association, supra.]

In this case, as we have said, there was an illegal by-

law fixing a minimum premium of ten per cent.   There was no written application for either of the loans, and the only agreement in writing to pay interest is to be found in the bonds.   So that any premium paid by Mc-Donnell, however small, was usurious under the facts disclosed by the record.   The question then presents itself as to how these matters are to be adjusted.   As was said in Laidley v. Cram, 70 S. W. 912: "If the premiums are treated as interest on the assumption that they were fixed arbitrarily instead of by free competition, the total rate per year of interest charged can not be calculated on the facts before us; for, to do that exactly, the loans would have to run until the stock matured, while, to do it approximately, testimony is needed as to the time when it will probably mature."   [Robertson v. Association, 10 Md. 397; Association v. Flach, 1 Cin. Supe'r Ct. Rep. 468; Hagerman v. Association, 15 Ohio St. 186.]

Plaintiffs challenge the constitutionality of the building and loan association statute upon the ground that said act, and particularly that section which provides that the premiums bid in accordance with the requirements of the statute, shall not be considered as interest or render the loan usurious, violates that provision of the Constitution which prohibits the Legislature from passing "any local or special law fixing the rate of interest."   But as we have indicated that the premiums bid were not in accordance with the requirements of the statute and therefore illegal, it is unnecessary to pass upon the question presented upon this feature of the case, and we must decline to do so.

Plaintiffs complain in their brief that the trustee in the deeds of trust was an incompetent person to discharge the duties of those positions because an officer in the association, but there is no merit in this contention. Nor is the assertion that he was not present at the time

of the sale of the property under the deeds of trust, sustained by the record.

There is no merit in the contention of plaintiffs that the sale of the property should be set aside upon the ground of inadequacy of price. It is a well-established rule in equity that mere inadequacy of price, in the absence of other considerations, is no ground for setting a sale aside, unless it be so great and unconscionable as to shock the moral sense.

Bispham in Principles of Equity (6 Ed.), sec. 219, says:

"Ordinarily, inadequacy of consideration will be insufficient to set a bargain aside, or to justify a refusal to enforce its specific performance. Where, however, the inadequacy is so great as to 'shock the conscience' (which is the phrase usually employed) contracts may be rescinded. . . . A case, therefore, of fraud from inadequacy of consideration, pure and simple, and unmixed with any other kind of fraud, is of very rare occurrence. Nevertheless, the rule must be considered as well settled, although rather by dicta than by decisions, that a transaction will be set aside if there is 'an inequality so strong, gross and manifest, that it must be impossible to state it to a man of common sense without producing an exclamation at the inequality of it.' The relief, however, in such cases is granted (it is said) not on the ground of inadequacy of consideration, but on the ground of fraud as evidenced thereby." [Holmes v. Fresh, 9 Mo. 201.]

The doctrine thus announced is the well-settled law of this State.

Defendants contend that, as McDonnell was present at the trustee's sale, and interposed no objection thereto or to the manner in which the property was being sold, he and his heirs are estopped in equity, morals and conscience, from questioning the validity thereof. Upon the other hand, plaintiffs insist that no such defense is pleaded, and in order to be available as such this should

have been done. While the general rule is in accordance with plaintiffs' contention it is not under all circumstances absolutely necessary that estoppel should be pleaded in order to be available as a defense, but like many other defenses it may be waived by the plaintiff in the case by proceeding with the trial of the case without objection as if the defense relied upon had been pleaded. This precise question was before this court in Price v. Hallett, 138 Mo. 561, in which GANTT, P. J., speaking for the court said:

"It has often been decided by this court that estoppel *in pais* must be pleaded. [Bray v. Marshall, 75 Mo. 327; Noble v. Blount, 77 Mo. 235; Avery v. Railroad, 113 Mo. 561.] It was so held on an objection to testimony in Bray v. Marshall, supra. In Noble v. Blount, it was said there was neither a pleading nor evidence to justify such an instruction. It seems to us this doctrine has peculiar weight when invoked against the admissibility of evidence when no issue of estoppel has been tendered in the pleadings, or when an estoppel *in pais* is urged for the first time in this court, but where parties have permitted an issue of this kind to be raised by the evidence without objection, and have had full opportunity to try the issue, we are unable to draw a distinction between such a case and those cases in this State in which parties have neglected to file replies, and this court has held that it was too late after trying the case as if a reply had been filed to claim that the answer was admitted. Had a timely objection been made when this evidence tending to show an estoppel was offered as against Benecke, it would have been excluded, or the court would have permitted an amendment pleading such estoppel, but no such objection appears to have been made at that time, and now that the evidence has been heard and the instruction given upon it, we think it is too late to raise the question of pleading on that point."

The same rule applies alike in law and equity cases.

[Guffey v. O'Reiley, 88 Mo. 418.] In that case in discussing the doctrine of equitable estoppel, SHERWOOD, J., in speaking for the court, said:

"The same principle is forcibly asserted in Wendell v. Van Rensselaer, 1 Johns. Ch. 344, where no statements were made, no active inducements held out, nor encouragement given by defendant who was grantee in the deed under which he claimed, but the grantor remained in possession, and from time to time sold portions of the land, and improvements thereon were made in full view of the defendant's residence, some of the purchasers being known to the defendant; and Chancellor KENT, when commenting on this state of facts and the acts of the defendant, said: 'He preserved a studied silence, and gave no notice to those purchasers, or to the world, of his title. After this, he can not be permitted to start up with a secret deed . . . and take the land from bona fide purchasers under the testator' (i. e., Phillip Wendell, who had made the deed to the defendant). If the plaintiff had been present the next day, when the defendant's verbal contract with Hughes was consummated by purchase and deed, and had remained silent, there is no conflict in the authorities that this would have estopped him as against the title of the defendant then and thus acquired. And his standing by and saying nothing, would have been regarded, in such circumstances, a holding out tacit inducements, or encouragements, to the defendant to purchase, or else as being so culpably negligent that it would amount to the same thing. . . . For 'the estoppel may arise, as we have intimated, from misleading silence or passive conduct joined with a duty to speak.' [Bigelow on Estoppel, 492.] . . . This doctrine of equitable estoppel lies at the foundation of morals; especially concerns conscience and equity; under its benign rule, entitled as it is, like other equitable doctrines, to a fair and liberal application, fraud is suppressed, and honesty and fair dealing promoted;

McDonnell v. De Soto Sav. & Bldg. Assn.

conduct becomes equivalent to representations, and acts to direct statements. Such estoppels may be given in evidence, and operate as effectually as technical estoppels; they can not in the nature of things be subjected to fixed and settled rules of universal application like legal estoppels, nor hampered by the narrow confines of a technical formula.''

McDonnell was a director in the present De Soto Savings and Building Association from March, 1895, to 1898. He knew defendant Hartnett, and that he was president of said ''association,'' and trustee in both these deeds of trust at the time they were executed. He knew Mr. Brady, the secretary of said ''association,'' and that he acted as auctioneer at the sale. He complained of neither of these matters in the amended petition. He knew that his property was to be sold under the deed of trust, before the sale, and he solicited Zelle Brothers, who held a third deed of trust for $3,000 on the property, to be present and bid. He and the officers of said ''association'' alone knew the facts making these loans usurious, if any such usury be held to exist. He was present at the sale, and knew (so he testifies) that in addition to Mr. Ryan, who was present and bid at said sale for said ''association,'' there were two other bidders. Yet in view of all this knowledge, John McDonnell stood by at the sale of his property, under his own deed of trust, and made on account of his default in payments, and made no protest against the same, or objection thereto.

Our conclusion is that the judgment should be affirmed as to the defendants Hartnett and Anderson, and reversed and remanded as to the defendant De Soto Savings and Building Association to be tried in accordance with the views herein expressed.

It is so ordered. All of this Division concur.